IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>v.<br><br>MANUEL LIRIANO, *et al.*,<br><br>**Defendants.** | **CIVIL NO.** 12-293 (JAG) |

**OPINION & ORDER**

Garcia-Gregory, D.J.

On January 18, 2013, a Grand Jury returned a superseding indictment against co-defendants Manuel Liriano-De-La-Cruz, Jose Pena-Santo, Alejandro Difot-Santos, Jonathan Joel Gil-Martinez, Jose Ramon Vicente-Arias, and Carlos De-La-Cruz-Sanchez.[1] (Docket No. 194). Counts One and Two charged co-defendants with conspiring to possess and import controlled substances while on board a vessel subject to the jurisdiction of the United States. In addition, co-defendants Liriano and Pena, being previously deported aliens, were charged with illegal re-entry to the United States. Co-defendants Difot and Almonte pled guilty, and

---

[1] Co-Defendant De-La-Cruz-Sanchez later informed his true name was Bonifacio Toribio Almonte. (See Docket No. 150).

the rest went to trial. On February 16, 2013, the jury found defendants guilty as to all counts.

Now before the Court is defendant Manuel Liriano-de-la-Cruz's ("Liriano") motion requesting a judgment of acquittal pursuant to Fed. R. Crim. P. 29 or, in the alternative, a new trial pursuant to Fed. R. Crim. P. 33. (Docket No. 187). This motion was joined by the other co-defendants who went to trial with Mr. Liriano. (See Docket Nos. 188, 189, 201 and 202). The government timely filed its opposition. (See Docket No. 209). For the reasons outlined below, the Court DENIES the aforementioned motions.

**STANDARD OF REVIEW**

Pursuant to Fed. R. Crim. P. 29, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When considering a motion under Rule 29, the Court must determine "whether the total evidence, including reasonable inferences, when put together is sufficient to warrant a jury to conclude that defendant is guilty beyond a reasonable doubt." Dirring v. United States, 328 F.2d 512, 515 (1st Cir. 1964); see also United States v. Doe, 921 F.2d 340, 343 (1st Cir. 1990). In assessing the sufficiency of the

evidence, the Court must "'. . . view the evidence and draw reasonable inferences in the light most favorable to the verdict.'" United States v. Diaz, 300 F.3d 66, 77 (1st Cir. 2002)(quoting United States v. McGauley, 279 F.3d 62, 66 (1st Cir. 2002)). "The evidence is legally sufficient so long as, taken as a whole, it warrants a judgment of conviction." United States v. Baldyga, 233 F.3d 674, 678 (1st Cir. 2000). "[A] verdict of guilty shall stand unless, after reviewing the evidence in the light most favorable to the prosecution, the Court finds that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." U.S. v. Marquez Figueroa, 283 F.Supp.2d 596, 598 (D.P.R. 2003)(citing Jackson v. Virginia, 443 U.S. 307, 324 (1979))(emphasis in the original).

On the other hand, Federal Rule of Criminal Procedure 33 empowers the court to grant a new trial "if required in the interest of justice." Fed. R. Crim. P. 33. "The remedy of a new trial is rarely used; it is warranted only where there would be a miscarriage of justice or where the evidence preponderates heavily against the verdict." United States v. Rodriguez-de Jesus, 202 F.3d 482, 486 (1st Cir. 2000) (citing United States v. Gonzalez-Gonzalez, 136 F.3d 6, 12 (1st Cir. 1998)).

**ANALYSIS**

<u>Sufficiency of the Evidence</u>

Co-defendants contend that the government's evidence was insufficient to establish their guilt beyond a reasonable doubt on counts 1 and 2 of the superseding indictment. Co-defendants point to the jury instruction regarding 'mere presence' and argue that, from the evidence presented at trial, no reasonable jury could infer that any co-defendant was part of a conspiracy. Aside from showing they were "in a small boat which contained controlled substances," co-defendants assert that there was no proof showing any of them "[did] or [said] something to join the conspiracy." (Docket No. 187, p. 3).

Unfortunately, co-defendants fail to cite a single case in support of their argument. They also fail to explain how, exactly, the government's proof is insufficient. The motion therefore skirts dangerously close to waiver on this argument. Nevertheless, and in an abundance of caution, the Court will examine argument on its merits.

In assessing the question whether crewmen are aware their vessel is carrying drugs, a jury may consider such factors as "the closeness of the crew's relationship, the length of the voyage, the size and condition of the vessel, the quantity of [drugs aboard], and the absence of a legitimate purpose for the voyage." <u>United States v. Guerrero</u>, 114 F.3d 332, 342 (1st Cir.

1997). "In circumstantial cases such as this one, the evidence is sufficient to convict if it adequately supports the requisite two-step inference: (1) that the vessel was engaged in obviously illegal activity and (2) that each defendant was ready to assist in the criminal enterprise." Id.

Here, neither party discussed the crew's internal relationship. But that was unnecessary; at trial, the government showed that co-defendants were

> onboard a small wooden vessel traveling with its lights out in the middle of the night, configured with a low profile, in a manner to evade detection by law enforcement, with a covered compartment fitted for smuggling, with a camouflaging paint scheme, with two engines, with multiple fuel drums onboard and with no evidence of any lawful purpose such as fishing.

(Docket No. 209, p. 6). This scenario is consistent with other cases dealing with illegal transport of controlled substances. See U.S. v. Guerrero, 114 F.3d 332, 343 (1st Cir. 1997)("vessel's low-profile construction signalled its plain purpose to avoid detection;" and "disproportionately large fuel tanks…" hinted at long journey); see also United States v. Romero, 32 F.3d 641, 644 (1st Cir. 1994)(involving similarly constructed vessel).

Moreover, once they were spotted by law enforcement, the crew started dumping packages from their vessel. The jettisoned cargo was later shown to contain controlled substances with a street value of more than three million dollars. The large

quantity of drugs involved tends to show that those who were allegedly "merely present" were in fact participants. See United States v. Piedrahita-Santiago, 931 F.2d 127, 131 (1st Cir. 1991) ("[A] relatively small vessel carrying a large quantity of drugs is indicative of knowledge and involvement on the part of the crew."). After all, "[d]rug smugglers handling such valuable drugs are unlikely to involve unknowledgeable outsiders." U.S. v. Rosa-Carino, 615 F.3d 75 (1st Cir. 2010). In addition, "the practical difficulties involved with concealing such a quantity of drugs makes it unlikely that the crew members were unaware of the drugs onboard the boat." See U.S. v. Angulo-Hernandez, 565 F.3d 2 (1st Cir. 2009).

If this were not enough, the government's expert witness testified that

> in his experience, having multiple persons onboard a vessel, ranging from four to six, is common in the maritime trafficking of narcotics into Puerto Rico as each individual is responsible for a specific role including, driving the boat, refueling the boat or switching out fuel tanks, navigating or operating a GPS, acting as a mechanic should an engine break, assisting as a look-out for law enforcement in the area, assisting with the jettisoning of the bales should law enforcement arrive on scene and which, in this case, based on the testimony of the witnesses, required at least two people to lift because they were so heavy, and offloading the narcotics once they reach shore.

(See Docket No. 9 at p. 6); see also Piedrahita-Santiago, 931 F.2d at 130 (involving seven crew members on forty-foot vessel

Case 3:12-cr-00293-JAG   Document 218   Filed 05/02/13   Page 7 of 15
**CRIM. NO.** 12-293 (JAG)                                                    7

that "would ordinarily require a crew of only three or four" and explaining that "[a] larger crew than ordinarily needed for navigation purposes suggests that the crew was hired for the purpose of loading and unloading cargo rather than merely steering the vessel").

The large quantity of drugs, coupled with the furtive nature of the voyage, the attempted evasion of law enforcement, and the other facts highlighted above, is sufficient for a jury to infer that *all* persons present in the vessel were part of a drug-importation conspiracy. On these facts, co-defendants cannot plausibly claim they just happened to be in the wrong place at the wrong time. See United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993) ("[A] defendant's 'mere presence' argument will fail in situations where the 'mere' is lacking."). Simply put, "drug traffickers would not entrust a multi-million-dollar shipment to anyone in whom they did not have confidence." Rodríguez-Durán, 507 F.3d 749, 760 (1st Cir. 2007); see also Guerrero, 114 F.3d at 344 ("unwitting bystanders would not have been hired to participate in the [boat's] obvious illegal transport of millions of dollars' worth of contraband"); United States v. Piedrahita-Santiago, 931 F.2d 127, 131 (1st Cir. 1991); and United States v. Cuevas-Esquivel, 905 F.2d 510, 515 (1st Cir. 1990) ("It is entirely reasonable for the jury to

**CRIM. NO.** 12-293 (JAG)                                                                 8

conclude the conspirators, engaged in conduct which by its nature is kept secret from outsiders, would not allow the presence of innocent bystanders."). Accordingly, the Court holds that the evidence at trial was sufficient to convict. Co-defendants' motion on this ground is therefore denied.

Arguments in Favor of a New Trial

Co-defendants set forth various arguments in support of their request for a new trial: 1) that the government secreted impeachment evidence from the defense, in violation of Brady;[2] 2) that the government violated a promise not to use statements made by co-defendants during trial, creating a Bruton[3] issue; 3) that the superseding indictment filed by the government one week before trial left the defense with inadequate time to prepare; 4) the jury instructions given by the Court undermined the defense's closing arguments; and 5) the Magistrate Judge refused to ask a question at *voir dire*, important enough that its omission warrants a new trial.[4]

---

[2] Brady v. Maryland, 373 U.S. 83 (1963)
[3] Bruton v. United States, 391 U.S. 123 (1968).
[4] On post-verdict motions grounded strongly on the facts, a transcript forms "an integral part of the court's decisional calculus." See Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 25 n.1 (1st Cir. 1997)(referring to post-trial motions for judgment as a matter of law). Unfortunately, while the transcripts were available, co-defendants' motion makes no

1. Brady

According to co-defendants, the government "hid from the defense, before and during trial, that some of its witnesses had prior bad acts." (Docket No. 187 at p. 5). The government hid nothing. Rather, the government provided the Court with an opportunity to assess that evidence prior to trial. After examining the same, the Court ruled that the evidence was not related to the witnesses' truthfulness. (See Docket No. 153). Therefore, the same was not in conflict with Giglio v. United States, 405 U.S. 150 (1972), and need not have been disclosed to the defense.

Nevertheless, the Court ordered that the government's motion be disclosed to the defense, and that the documents be preserved for appeal purposes. (See Docket No. 191). Co-defendants are entitled to renew this argument before the First Circuit if appeal is taken from this Opinion. At this time, however, their motion is denied on this ground.

2. Bruton

Co-defendants next contend that the government violated its promise not to use statements made by any of the defendants during trial. The argument, in its entirety, reads as follows:

> During the trial, a government witness testified as to an inculpatory statement made by one of the

---

reference to the same. The Court will, when possible, make reference to the trial transcripts.

>     defendants. The statement implicated him and the rest
>     of the co-defendants. As [defense] counsel remembers,
>     the statement admitted that all of the defendants were
>     on their way to Puerto Rico from the Dominican
>     Republic.

(Docket No. 187 at p. 8). Once again, counsel appeals to his own recollection of the events. The Court will turn to the transcript to address the argument.

Petty Officer Berghuis, one of the agents that intercepted co-defendants' vessel, recalled during his direct examination that "somebody said that [the co-defendants] had come from Santo Domingo, Dominican Republic." (Docket No. 181, p. 147). Later on, defense counsel requested a sidebar:

>     MR. GUZMAN: We were promised that no statements from
>     the client were going to come in. One just did. I
>     didn't want to object to it because I didn't want to
>     call attention to it, and I'm not blaming counsel
>     because I don't think counsel was trying to elicit a
>     statement, but I want to be careful that no more come
>     in.
>
>     MS. TIFFANY: I won't specifically elicit any testimony
>     regarding statements. I indicated previously that I
>     wasn't going to do that.
>
>     MR. GUZMAN: You did.
>     MS. TIFFANY: So I definitely am not going to go down
>     that road. […]
>     THE COURT: Okay.

(Id.).

As the government correctly points out, defense counsel agreed that the prosecutor did not violate the promise not to air those statements at trial. Rather, it seems to have been an

inadvertent statement made by the government's witness. Moreover, even if the prosecutor had willfully elicited the statement, co-defendants do not explain *how* that statement would create a Bruton problem. The Court will not perform that task for co-defendants. Their motion is denied on this ground as well.

3. Superseding Indictment

This case was set for trial on Tuesday, January 29, 2013. However, a grand jury issued a superseding indictment on January 18, 2013. (See Docket No. 133). The new indictment corrected Mr. Liriano's name on the charges against him; removed references to Mr. Liriano's previous conviction based on a stipulation reached with the government; and amended Count Three and Four of the indictment. Counts Three and Four originally charged defendants Liriano and Pena, aliens who had previously been deported, with having been "found in" the United States, in violation of 8 U.S.C. § 1326(a)(2).[5] The superseding indictment modified Counts Three and Four to read "attempting to enter" rather than "found in" as the modality of the § 1326(a) offense. (See Docket No. 133).

---

[5] That statute provides that any alien who "**enters, attempts to enter, or is at any time found in,** the United States," … "shall be fined under Title 18, or imprisoned not more than 2 years, or both." See 8 U.S.C. § 1326(a)(2) (our emphasis).

For some reason, the superseding indictment was not notified to the defense until Friday, January 25, 2013. (Id.). Accordingly, counsel for Mr. Liriano sought a two-week continuance of the trial. (See Docket No. 135). The government opposed the request, and argued that no continuance was warranted. (See Docket No. 139). Given the nature of the modifications to the original indictment, and the fact that a two-week extension would create a logistical problem with the government's witnesses, the Court elected to grant the defense a one-week continuance of the trial date.

Mr. Liriano now insists that a one-week extension was not enough, as the strategy was to move for dismissal of the illegal re-entry count as originally charged. Thus, argues Mr. Liriano, he was not adequately prepared for trial because he had anticipated he would not be tried as to that count. But Defendant does not explain why the one-week extension was insufficient. As the government correctly noted, the amended charges brought against defendants 1) do not require any additional discovery for the defendant to review; 2) is contained within the same section of law originally charged; and 3) does not constitute a material change in the theory of the government's case against defendants.

Thus, contrary to what the defense suggests, the superseding indictment filed here – though somewhat belated –

**CRIM. NO.** 12-293 (JAG)                                                  13

did not require Mr. Liriano to mount a wholly new theory of defense, and therefore was not sufficiently prejudicial such as to warrant a new trial.

   4. Closing Arguments

   In his closing argument, counsel for Mr. Liriano referenced the fact that those who had pled guilty were the ones responsible for the drug trafficking conspiracy. But the jury was not presented with any evidence, by either the government or the defense, that there were other co-defendants in this case that had pled guilty. The Court sustained the government's objection that those facts were not in evidence, and instructed the jury to disregard the argument. Co-defendants now argue that the Court neutralized the import of their closing arguments by instructing the jury to disregard any comment pertaining to any defendant not on trial.

   Once again, co-defendants provide no authority in support of their position. In any case, it is well settled that a prosecutor engages in misconduct when reference is made to evidence not admitted at trial. See U.S. v. Riccio, 529 F.3d 40, 45 (1st Cir. 2008); see also United States v. Azubike, 504 F.3d 30, 38 (1st Cir. 2007). The Court sees no reason why the same behavior should, in turn, be allowed from defense counsel. The co-defendants motion is therefore denied.

5. <u>Voir Dire Question</u>

The jury selection in this case was referred to a Magistrate Judge. During that process, the defense requested that the Magistrate Judge ask the following question:

> In the past several months a judge from the United States federal court, this court, has made a number of statements to the press about crime in Puerto Rico and the functioning of the federal court and the Puerto Rico courts. Have you heard or read or been told about any of these statements? How do you feel about what the judge said?

The Magistrate Judge refused. The defense argues that the comments "have been widely circulated in the [media]," that they have been subject to discussion by commentators, and have elicited "strong reactions" from the general public. (Docket No. 187 at p. 12). The defense suggests that this information would serve to indicate how the venirepersons "would behave as jurors." (<u>Id.</u>).

Nevertheless, "[i]n deciding on the manner in which to conduct voir dire, the court 'has broad discretion ... subject only to the essential demands of fairness.'" <u>U.S. v. Misla-Aldarondo</u> 478 F.3d 52, (1st Cir. 2007)(quoting <u>Real v. Hogan</u>, 828 F.2d 58, 62 (1st Cir. 1987)). "It need not permit counsel to dominate the process, nor pose every voir dire question requested by a litigant." <u>Hogan</u>, 828 F.2d at 62. Even if the question should have been asked, which we deny, the fact remains that co-defendants have not shown that the refusal to ask this

question prejudiced them in any material way. Therefore, their request for a new trial on this basis fails.

## CONCLUSION

For the reasons stated above, co-defendants motion for judgment of acquittal or for a new trial is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April, 2013.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
